TRANS WORLD CORPORATION, Plaintiff,

v.

ODYSSEY PARTNERS, Jack Nash, Leon Levy, Lester Pollack, Bert Fingerhut, Oppenheimer Holdings, Inc., Oppenheimer & Co., Inc., Oppenheimer Capital Corp., Oppenheimer Fund, Oppenheimer Special Fund, Oppenheimer Option Income Fund, Hamilton Funds, Inc., Centennial Growth Fund, Bishopsgate Trust PLC, Electra Investment Trust P.L.C., Hambros Investment Company A.G., Hambros Investment Trust PLC, Kavilco, Incorporated, Mr. Investment Associates, NR Investment Associates, Royston Investments Co., Eugene S. Rosenfeld and S.G. Warburg & Co., Ltd., Defendants.

No. 83 Civ. 1939 (MEL).

United States District Court, S.D. New York.

March 23, 1983.

Wachtell, Lipton, Rosen & Katz, New York City, for plaintiff.

Weil, Gotshal & Manges, New York City, for defendants Odyssey Partners, Leon Levy, Jack Nash and Lester Pollack; Den-nis J. Block, Irwin H. Warren, Joseph S. Allerhand, New York City, of counsel.

LASKER, District Judge.

On March 8, 1983 defendant Odyssey Partners ("Odyssey"), a shareholder of Trans World Corporation ("Trans World"), served on Trans World a demand for a list of Trans World's stockholders. After waiting for a response to the demand for the five-day period required under Delaware law,[1] Odyssey filed suit in the Delaware Chancery Court on March 14, 1983, seeking an order directing Trans World to furnish Odyssey with the requested stockholder list. On March 11, 1983 Trans World instituted the present action, alleging violations of various provisions of federal securities laws by Odyssey and the other defendants, and seeking (*inter alia*) injunctive relief to prevent the defendants from soliciting proxies from Trans World shareholders in connection with Trans World's annual shareholders' meeting, scheduled for April 27, 1983. The complaint also seeks a judgment declaring that Odyssey is not entitled to the stockholders list and that Section 220 of the Delaware General Corporation Law, which governs demands for stockholders lists, is unconstitutional under the Supremacy Clause of the United States Constitution (Article VI, Clause 2).

Trans World now moves to enjoin prosecution of the Delaware action on grounds of the alleged unconstitutionality of the Delaware statute upon which it is predicated; alternatively, Trans World moves to stay the Delaware action on the ground that Odyssey's demand for the stockholders list must be asserted as a compulsory counterclaim in the instant action.

## I.

We address first the question whether Trans World is entitled to an injunction based on its constitutional argument. Trans World contends that the Delaware courts have definitively construed Section 220 of the Delaware General Corporation

---

1. Trans World is a Delaware corporation.

Law so as to entitle a stockholder to inspection of a company's stockholders list regardless of whether the list is to be used for a purpose that violates federal securities laws. As thus construed, Trans World argues, the Delaware statute is unconstitutional under the Supremacy Clause because it " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' " in enacting the securities laws at issue here, Sections 13(d) and 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"). *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978), *quoting Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Trans World also argues that the doctrine announced in *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947), requires, as a matter of federal supremacy, that the Delaware courts consider federal-law defenses in determining whether Odyssey is entitled to inspect Trans World's stockholders list.

Trans World contends that abstention under the doctrine of *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is unwarranted here because the question whether federal securities law violations can be raised as a defense to a demand for a stockholders list is no longer open under Delaware law as represented in cases such as *General Time Corporation v. Talley Industries, Inc.,* 43 Del.Ch. 531, 240 A.2d 755 (Del.1968) and *Western Air Lines, Inc. v. Kerkorian,* 254 A.2d 240 (Del.1969). Trans World argues further that abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), would be inappropriate because (1) that doctrine applies only when the state is a party to the pending state proceeding; (2) the Delaware action does not involve "vital state interests," *Middlesex County Ethics Committee v. Garden State Bar Association,* —— U.S. ——, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); and (3) Trans World will have no adequate opportunity to raise its constitutional claims in the Chancery Court proceeding. Moreover, Trans World contends that the Anti-Injunction Act, 28 U.S.C. § 2283, poses no bar to enjoining the Delaware proceeding in light of the Court of Appeals' decision in *Studebaker Corp. v. Gittlin,* 360 F.2d 692 (2d Cir. 1966), which held that Section 21(e) of the Exchange Act authorizes the enjoining of a state proceeding to obtain a stockholders list "where the very act of prosecuting the state proceeding violate[s] federal law." *Id.* at 698.

Because we find that abstention under the *Pullman* doctrine is appropriate in this case, and that the enjoining of the Delaware Chancery Court proceeding is in any event barred by the Anti-Injunction Act, we do not reach the merits of Trans World's constitutional claim. Several factors warrant the conclusion that this Court should abstain from deciding the constitutionality of Section 220. First, although Delaware cases have held that various federal-law defenses are irrelevant to the question whether a stockholders list is being sought for a "proper purpose" under Section 220—*e.g.,* the purpose of communicating with other shareholders—we are aware of no case in which the issue has been presented to the Delaware courts in the constitutional terms urged here by Trans World. Second, even though Trans World may well be correct in predicting that the Delaware courts are extremely unlikely to construe Section 220 so as to avoid the need for determining Trans World's constitutional claim, there is no justification in the circumstances of this case for speculating about the matter.[2] The Delaware Chancery proceeding is scheduled to go to trial on March 24th, and Trans World will be able to present its constitutional argument there. Once the Delaware courts[3] have ruled on the question, there will be no need for this Court to "forecast" the Delaware courts' likely attitude toward the issue. *Carey v.*

---

2. This determination applies equally to Trans World's argument based on *Testa v. Katt, supra.*

3. Trans World presumably will be entitled to seek review in the Delaware Supreme Court of any adverse ruling by the Chancery Court.

*Sugar,* 425 U.S. 73, 77, 96 S.Ct. 1208, 1210, 47 L.Ed.2d 587 (1976). Abstention seems particularly appropriate where a federal court is asked to enjoin the very state proceeding which will remove any uncertainty about the necessity of determining a state statute's constitutionality.[4]

Even if *Pullman* abstention were inappropriate here, there is serious doubt that this Court is authorized, under any of the exceptions to the Anti-Injunction Act, 28 U.S.C. § 2283, to enjoin the Delaware proceeding. The Anti-Injunction Act states:

"a Court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The only exception urged by Trans World to be applicable here is the exception for injunctions "expressly authorized" by federal law. Trans World argues that the express authorization for the injunctive relief it seeks is found in Section 21(e) of the Exchange Act, which permits the Securities and Exchange Commission to bring an action to enjoin acts or practices which the Commission believes violative of federal securities laws or regulations. Although *Studebaker, supra,* held that private parties as well as the Commission are in some circumstances authorized by 21(e) to seek injunctive relief against a pending state proceeding, the holding of *Studebaker* is not applicable to the circumstances of the instant case. *Studebaker* involved a demand for a stockholders list under New York law, which required that a party demanding a stockholders list obtain authorizations from a certain percentage of shareholders prior to making the demand. In *Studebaker* the authorizations presented in the state court action had plainly and on admitted facts been obtained in violation of federal securities law, because they were obtained prior to the filing of proxy materials required by Section 14(a) of the Exchange Act. The Court held that an injunction against use of the illegally-obtained authorizations in the state-court proceeding was proper, since "the very act of prosecuting the state proceeding violated federal law." *Id.* at 698. In contrast, Odyssey's prosecution of the Delaware proceeding involves no such admitted violation; Odyssey's standing to prosecute that action depends only upon its status as a shareholder, and there is no allegation that Odyssey's shareholder status was improperly or illegally obtained. Nor is an injunction against the Delaware proceeding necessary to prevent Odyssey from using the stockholders list for purposes allegedly in violation of the federal securities laws, since Trans World is free to seek an injunction against such conduct in the instant proceeding. As stated in *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970):

"Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion."

*Id.* at 297, 90 S.Ct. at 1748; *see also Vernitron Corp. v. Benjamin,* 440 F.2d 105 (2d Cir.), *cert. denied,* 402 U.S. 987, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1971); *Jacobs v. Tenney,* 321 F.Supp. 937 (S.D.N.Y.1970).[5]

---

**4.** Odyssey's argument in favor of *Younger* abstention, though not fanciful, is not as persuasive as its argument in favor of Pullman abstention. See *Marshall v. Chase Manhattan Bank,* 558 F.2d 680 (2d Cir.1977); *cf. Cousins v. Wigoda,* 463 F.2d 603 (7th Cir.1972). In light of our decision that abstention is warranted under *Pullman,* however, we need not decide the *Younger* issue.

**5.** Trans World also claims that the instant action falls under an exception to the Anti-Injunction Act because it is brought under 42 U.S.C. § 1983. *See Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Trans World's complaint, however, contains no § 1983 claim; § 1983 is mentioned only in its jurisdictional recitation. Trans World's argument therefore is without merit.

■ Moreover, we find persuasive the argument that Trans World's present attempt to prevent Odyssey from obtaining Trans World's stockholders list is the practical equivalent of a request for a preliminary injunction solely on the strength of Trans World's federal securities law claims: at this juncture Trans World has not made the showing required to entitle it to such relief. Even assuming that Trans World's claim of irreparable injury is not significantly attenuated by the fact that Odyssey plans to present a purely precatory resolution for shareholder approval, there are no facts of record which demonstrate Trans World's likelihood of success on the merits of its securities law claims. Furthermore, in view of the clear prejudice that would result to Odyssey if it were precluded from communicating with Trans World's shareholders prior to the April 27th annual meeting, the balance of hardships in this case cannot be said to favor Trans World. While we venture no opinion on whether Trans World will be able to make the requisite showing for a preliminary injunction when and if Trans World moves for such relief, it clearly has not done so at this time.

## II.

■ Trans World also argues that the Delaware action should be stayed because Odyssey is required to assert its demand for the stockholders list as a compulsory counterclaim in this proceeding. The argument is unpersuasive. Although Trans World places heavy emphasis on the fact that the present action was filed before the filing of Odyssey's action in the Delaware Chancery Court, the observance of a "first-filed" rule in the circumstances of this case would result in more inequity and inefficiency than it would prevent. Odyssey made its demands for Trans World's stockholders list on March 8th, and under Delaware law was required to wait five days, or until March 14th, for a response before filing an action

to compel inspection of the list. Trans World filed the instant action on March 11th, placing Odyssey's right to the stockholders list in issue by seeking a declaratory judgment that Odyssey is not entitled to obtain the list. This sequence of events hardly shows Odyssey to have attempted a needless proliferation of litigation in seeking inspection of the stockholders list through the summary proceeding required under Delaware law, and does not warrant the issuance of a stay of the Delaware proceeding. See *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978); *Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742, 747 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir.1978). In any event, the narrow and discrete nature of the Delaware proceeding, which determines only the question of Odyssey's right to inspect the stockholders list, makes inappropriate the application of the compulsory counterclaim rule in these circumstances.

For the foregoing reasons, Trans World's motion is denied in all respects.[6]

It is so ordered.

---

**6.** Odyssey suggests in its brief that the Court should stay the present proceeding as it relates to Odyssey's right to the stockholders list. In view of our decision to abstain from deciding Trans World's constitutional claim such a stay

appears unnecessary. Odyssey also seeks an award of the costs of this motion against Trans World. Because we do not find the motion to be capricious, Odyssey's request is denied.