In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4340

Midwestern Gas Transmission Company,

Plaintiff-Appellant,

v.

William D. McCarty, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00 C 592--David F. Hamilton, Judge.

Argued September 24, 2001--Decided November 2, 2001

  Before Posner, Ripple, and Kanne, Circuit
Judges.

  Posner, Circuit Judge.  This is a suit by
an interstate natural-gas pipeline,
Midwestern, to enjoin the Southern
Indiana Gas and Electric Company (SIGECO)
from prosecuting an action before the
Indiana Utility Regulatory Commission
(IURC) and the Commission from
entertaining the action. SIGECO seeks in
that action a ruling that Midwestern
must, pursuant to Ind. Code sec.sec. 8-1-
2-87, 87.5, obtain IURC's permission to
connect its pipeline to two industrial
users of gas in Indiana who purchased
their gas from out of state sellers other
than Midwestern but seek delivery of the
gas from Midwestern, which has a pipeline
close to these users. The Federal Energy
Regulatory Commission (FERC) had approved
the connection upon application by
Midwestern in a proceeding that began
prior to the proceeding initiated by
SIGECO before the Indiana commission,
which in fact had stayed its proceeding
to await the outcome of the proceeding
before FERC.

  The ground of Midwestern's suit was that
the Natural Gas Act preempts the state
regulatory law on which SIGECO has based
its action before the Indiana commission.
The district court dismissed the suit,
ruling that the Younger doctrine (on

which see, e.g., Younger v. Harris, 401 U.S. 37, 43-53 (1971); New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 364-70 (1989); Lynk v. LaPorte Superior Court No. 2, 789 F.2d 554, 557-60 (7th Cir. 1986)) required Midwestern, if it wanted to argue preemption, to argue it as a defense in the proceeding before the state commission.

Younger holds that federal courts are not to use their equity powers to enjoin proceedings in state courts or (see Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 626-27 (1986)) administrative agencies merelybecause the person seeking the injunction has a federal defense to the state proceeding. States oughtn't to be impeded in their efforts to enforce their own laws in their own courts and administrative agencies by injunctions issued at the behest of defendants in state proceedings who, seeking to delay and if possible derail those proceedings in midcourse, run to a federal court for an injunction against the continuation of the proceeding. Hoover v. Wagner, 47 F.3d 845, 848 (7th Cir. 1995); Grode v. Mutual Fire, Marine & Inland Ins. Co., 8 F.3d 953, 957 (3d Cir. 1993); Champion International Corp. v. Brown, 731 F.2d 1406, 1408 (9th Cir. 1984). The policy has no application to a case such as this, in which, because of dual federal-state jurisdiction over an activity, here the sale and distribution of natural gas, a federal proceeding (here before the Federal Energy Regulatory Commission) overlapping the state proceeding reaches completion while the state proceeding is still pending at an early stage. There is no affront to the state's prerogative of enforcing its own laws when valid federal law has created a federal forum for the determination of issues that the state proceeding would be able to consider and the proceeding in the federal forum determines those issues before the counterpart state forum is ready to do so. "[P]rinciples of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court." Town of Lockport v. Citizens for Community Action at Local Level, Inc., 430 U.S. 259, 264 n. 8 (1977); see also Montclair Parkowners Ass'n v. City of

Montclair, 264 F.3d 829, 830-31 (9th Cir. 2001); Polykoff v. Collins, 816 F.2d 1326, 1332-33 (9th Cir. 1987); Mobil Oil Corp. v. City of Long Beach, 772 F.2d 534, 542-43 (9th Cir. 1985).

The Natural Gas Act grants the Federal Energy Regulatory Commission jurisdiction to regulate the interstate transportation of natural gas, 15 U.S.C. sec. 717(b), and the Supreme Court has held that the Commission's jurisdiction is exclusive; state regulation is preempted. Northwest Central Pipeline Corp. v. State Corporation Comm'n, 489 U.S. 493, 506-07 (1989); Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 300-01 (1988); see also Cascade Natural Gas Corp. v. FERC, 955 F.2d 1412, 1421 (10th Cir. 1992). It seems to us, as it has seemed to the other courts to have addressed the issue, see id. at 1418-19; Public Utilities Comm'n v. FERC, 900 F.2d 269, 276-77 (D.C. Cir. 1990); Michigan Consolidated Gas Co. v. Panhandle Eastern Pipe Line Co., 887 F.2d 1295, 1300 (6th Cir. 1989), that the transportation of natural gas bought and produced out of state to Indiana residents via Midwestern's pipeline is interstate transportation rather than being intrastate transportation from, as it were, the purchasers to themselves. It is via the pipeline that gas is brought from out-of-state producers to Indiana residents. Midwestern was therefore required to obtain, and so sought and did obtain, FERC's authorization to build the lines necessary to connect its pipeline to the premises of the buyers. See 15 U.S.C. sec. 717f(c); 18 C.F.R. sec. 157; Northwest Central Pipeline Corp. v. State Corporation Comm'n, supra, 489 U.S. at 520.

SIGECO, which would like to be the supplier of these buyers, was entitled to participate as a party in the FERC proceeding. 15 U.S.C. sec. 717f(c)(1)(B); 18 C.F.R. sec. 157.10; United Gas Pipe Line Co. v. McCombs, 442 U.S. 529, 538 (1979). As a party, litigating under a broad public convenience and necessity standard, it could make a wide range of arguments against the grant of permission to Midwestern to build the spur to the users--such arguments as that a pipeline with which SIGECO has a contract is nearer to the buyers (five thousand feet versus three miles) and that therefore

less construction of new distribution lines, with possible adverse environmental consequences, would be necessary. Midcoast Interstate Transmission, Inc. v. FERC, 198 F.3d 960, 967-68 (D.C. Cir. 2000). SIGECO made a number of such arguments, which were rejected, setting the stage for a collateral estoppel argument by Midwestern that we'll not have to consider. SIGECO could have made every one of the arguments that it seeks to make (and that Midwestern seeks to enjoin it from making) in the proceeding before the Indiana commission, which SIGECO contends has the authority, by virtue of the two provisions of the Indiana Code that we cited earlier, which indeed require IURC's permission to hook up a pipeline within the state to a purchaser within the state, to forbid Midwestern to connect to the two users even though FERC has authorized it to do so.

Whether or not a state has some residual authority to block a connection authorized by FERC (dual federal-state authority to deny needed permits is of course common), we cannot see how the Younger doctrine is impaired by forcing a disputant to make his arguments in the first authorized forum to become seised of his dispute, just because that forum may be federal and a state proceeding may be stacked, as it were, behind it. Indeed, there is a peculiar perversity in SIGECO's invocation of the Younger doctrine. It is a doctrine that channels all proceedings into a single forum, the state court or agency, see Hickey v. Duffy, 827 F.2d 234, 239 (7th Cir. 1987); Waldron v. McAtee, 723 F.2d 1348, 1357 (7th Cir. 1983); Ballard v. Wilson, 856 F.2d 1568, 1570 (5th Cir. 1988), whereas SIGECO is arguing for using the doctrine to split the proceedings between federal and state agencies. The injunction sought by Midwestern merely seeks to prevent vexatious litigation by a disappointed party, namely SIGECO, in the federal regulatory proceeding.

There is more that is wrong with invocation of the Younger doctrine in this case. The doctrine presupposes that the state has a valid interest that it is seeking to enforce, even if there may be objections based on federal law to a particular enforcement proceeding. For example, no one doubts that a state has a

valid interest in enforcing the ethical rules governing the behavior of lawyers in the state's courts, though in a particular case there might be a valid federal defense--the proceeding might violate due process or some other federal right. If the state does not have such an interest, if for example it is seeking to regulate activities that clearly are under exclusive federal control, then there is no basis for invoking Younger. See Chaulk Services, Inc. v. Massachusetts Comm'n Against Discrimination, 70 F.3d 1361, 1370 (1st Cir. 1995), and cases cited there; Norfolk & Western Ry. v. Public Utilities Comm'n of Ohio, 926 F.2d 567, 573 (6th Cir. 1991). This is not to say that a defense of federal preemption automatically defeats Younger, the position rejected in New Orleans Public Service, Inc. v. Council of City of New Orleans, supra, 491 U.S. at 364-67. That would be question-begging. The state court has the same right and power to decide a defense of preemption as it does to decide any other federal defense. But the state here is not asserting a state interest; it is trying to take control of the interstate market in natural gas. There just is no way in which forcing Midwestern to obtain IURC's permission to deliver gas to these Indiana purchasers from out of state can be thought to advance a legitimate state interest. Mere defiance of clear federal law removing an area from potential state regulation is not such an interest.

We can see this more clearly by asking just what SIGECO's "interest" in the case is--why it wants to block Midwestern from delivering gas to these Indiana establishments. SIGECO is a local gas distribution company that has contracts with several pipelines, not including Midwestern. The pipelines do not sell gas themselves, they merely transport it, but they have affiliates that sell the gas they transport. The affiliates of the pipelines that supply SIGECO are in competition with the gas companies that sold the gas to the two Indiana purchasers who want Midwestern to deliver it to them. If SIGECO can persuade the Indiana commission to forbid Midwestern to deliver the gas, these purchasers will have to rescind their purchases and instead buy from an affiliate of one of the pipelines with which SIGECO has a

contract; in that event SIGECO will make the connection between the pipeline and the customer's premises and obtain a fee for doing so. In other words, SIGECO is seeking to enlist the State of Indiana in an effort to limit interstate competition in the sale of natural gas, specifically an effort to compel users of gas in SIGECO's market area to buy from a supplier contractually linked to SIGECO. SIGECO wants to charge a toll to anyone who sells gas in its service area.

But Congress and FERC have ordained, the former in deregulatory amendments to the Natural Gas Act and the latter in a host of implementing regulations, that there shall be a nationwide competitive market in the sale of natural gas. See Natural Gas Policy Act of 1978, Pub. L. No. 95-621; Natural Gas Wellhead Decontrol Act of 1989, Pub. L. No. 101-60, both codified at 15 U.S.C. sec. 3301 et seq.; Department of Energy, Federal Energy Regulatory Commission, Order No. 636, 57 Fed. Reg. 13267, 13268-69 (1992); Department of Energy, Federal Energy Regulatory Commission, Order No. 436, 50 Fed. Reg. 42408, 42411 (1985); General Motors Corp. v. Tracy, 519 U.S. 278, 283-84 (1997); Richard J. Pierce, Jr., "The Evolution of Natural Gas Regulatory Policy," 10 Natural Resources & Environment 53, 54-55 (Summer 1995); Michael J. Doane & Daniel F. Spulber, "Open Access and the Evolution of the U.S. Spot Market for Natural Gas," 37 J. Law & Econ. 477 (1994). It was pursuant to this federal policy that Midwestern was authorized by FERC to deliver the gas ordered from out of state by Indiana purchasers. SIGECO must be enjoined from harassing the purchasers and Midwestern by pursuing a state regulatory proceeding aimed at undoing the results of a federal regulatory proceeding.

The judgment denying the relief sought by Midwestern is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

Reversed and Remanded.